Adam Pollock
Raphael Janove (*pro hac vice* forthcoming)
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
*Attorneys for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KURT LARSEN, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>NORDICTRACK, INC., iFIT Inc., and iFIT HEALTH & FITNESS, INC.,<br><br>                Defendants. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Civ. No. |

    Plaintiff Kurt Larsen brings this class action on behalf of himself and all others similarly situated against NordicTrack, Inc., iFIT, Inc., and iFIT Health & Fitness, Inc. (collectively "NordicTrack" or "Defendants") for breaches of warranty under the Magnuson-Moss Warranty Act, and alleges the following based upon personal information and investigation, and the investigation of its counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

    1.    Plaintiff challenges the conduct of NordicTrack, which abruptly, and without warning, cancelled all live classes offered, through Defendants' iFIT

software, on NordicTrack bikes and treadmills. Defendants' conduct violates written and implied warranties. Accordingly, Plaintiff seek damages and equitable relief on behalf of himself and all others similarly situated under the Magnuson Moss Warranty Act ("MMWA").

2.     NordicTrack sells exercise bikes and treadmills for thousands of dollars. The bikes and treadmills use the operating software iFIT, which, until recently, offered live exercise classes, among few other live features.

3.     Despite marketing iFIT and describing live classes as a key functional feature of this exercise equipment, Defendants ceased offering all live classes on May 27, 2022.

4.     Defendants, however, have not offered consumers any compensation or discounts for the removal of a key feature of NordicTrack bikes and treadmills. To the contrary, Defendants expect consumers to continue to pay full price for iFIT subscriptions despite the removal of live classes.

5.     Plaintiff, who purchased a NordicTrack bike and used to regularly take live classes, wrote Defendants asking them to fix the issue or otherwise compensate Plaintiff. Defendants have not responded to Plaintiff.

6.     As a result of NordicTrack's conduct, Plaintiff brings this class action asserting claims under the MMWA against Defendants for breaching their written and implied warranties.

## THE PARTIES

7.     Plaintiff Kurt Larsen lives in Ringwood, New Jersey. On July 21, 2019, he purchased an S22i studio cycle bike and iFIT membership from Defendants.

8.      Defendant iFIT Inc. is a Utah corporation headquartered in Logan, Utah.

9.      Defendant iFIT Health & Fitness Inc. is a Delaware corporation headquartered in Logan, Utah.  iFIT Health & Fitness Inc. is the corporate parent of iFIT Inc.

10.     Defendant iFIT Inc. and Defendant iFIT Health & Fitness Inc. (together, "iFIT") are a health and fitness technology companies that sell NordicTrack fitness equipment, including stationary bikes, treadmills, ellipticals, and rowers, that is paired with "iFIT" exercise software.

11.     Defendant NordicTrack, Inc. is a Utah corporation headquartered in Logan, Utah. The NordicTrack brand has been owned and managed by iFIT for over twenty years.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than the Defendant.

13.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(a)(1).

14.     This Court has personal jurisdiction over Defendants because they committed the tortious acts alleged herein in this District, regularly conduct business in this District, and have extensive contacts with this forum.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants transact substantial business in this District.

## FACTUAL ALLEGATIONS

**A.     NordicTrack: A Brief Company History**

16.     NordicTrack began selling ski exercise machines in 1975. By the early 1990s, NordicTrack expanded beyond ski machines, producing non-motorized and motorized treadmills, weight training machines, elliptical machines, and various other fitness products.

17.     In the early 1990s, NordicTrack expanded at an unsustainable rate. In 1997, the company downsized and eventually filed for bankruptcy. The NordicTrack name was then sold to ICON Health & Fitness, which is now called iFIT.

18.     In 2020, iFIT reported sales of $3.8 billion, and an estimated 16,000 employees. The company currently offers treadmills, bikes, ellipticals, rowers, and strength-training equipment.

19.     iFIT boasts "over 6.1 million Total Members and 1.5 million Total Fitness Subscribers in over 120 countries."[1] iFIT has also become "the #1 provider of large fitness equipment in the United States," a development it explains was "[d]riven by the adoption of our iFIT platform."

---

[1] *See* iFIT Health & Fitness Inc. Form S-1 SEC Registration Statement (Aug. 31, 2021)

20.     iFIT's exercise equipment, including NordicTrack bikes and treadmills, uses the iFIT operating system, which previously "allow[ed] members to gain access to [Defendants'] full library of iFIT live and on-demand content."

21.     Defendants credit their successes to selling hardware with iFIT software and live classes:

> Our iFIT operating system provides interactive experiences on all of our connected equipment brands, allowing members to gain access to our full library of iFIT **live** and on-demand content for $15/month for individuals or $39/month for families of up to five (or $396 when paid annually). **We believe the combination of our proprietary software and experiential content connected with our interactive hardware** creates a compelling value proposition for our rapidly growing member base and generates attractive recurring subscription revenue.

**B.      Live Fitness Classes and NordicTrack Bikes and Treadmills**

22.     Defendants tether the purchase of NordicTrack exercise equipment to the purchase of a subscription iFIT membership, which ranges from $15–$40 per month. Defendants usually offer a free trial-membership with new purchases.

23.     The exercise equipment is designed to use iFIT software and Defendants point to the equipment's use of the software, including live classes, as a key feature of the equipment.

24.     Until recently, iFIT subscribers could access live classes and other live features:



25.    In 2021, consumers streamed 142 million live and on-demand interactive iFIT workouts.

26.    Defendants advertise that their exercise bikes and treadmills are designed to be used with iFIT. Defendants also repeatedly emphasize the features of iFIT in describing their exercise equipment.

27.    For instance, the web page advertising NordicTrack's Commercial S22i Studio Cycle prominently featured, as a key function of the bunk, the live fitness classes offered through iFIT:



28.     The pictured user is selecting an iFIT class on the bike's screen. The website features a "30-Day iFIT Family Membership," and includes an "iFIT Workout Rating," with the disclaimer explaining: "Average IFIT workout rating is provided by each user at the end of a workout on their equipment."

29.     The gray banner at center below the image includes the iFIT logo with the text: "LIVE and On-Demand Worldwide Workouts."

30.     Live workouts are further emphasized in the description of the bike's touchscreen, which boasts that "LIVE iFIT workouts can be streamed with even more consistent quality . . ."



31.     The page continues with more promises about live functionality, including the ability to participate in live classes "in [ ] homes, on the local trails, or across the globe LIVE"; to "compete against the iFIT community" using the "LIVE WORKOUT LEADERBOARD," and to "[t]ext your trainers in real-time."



32.     The page also states that instructors, in real time, will automatically adjust the incline and resistance on the exercise bike:



33.     Defendants' descriptions of treadmills are similar, repeatedly highlighting live workouts and other live features.



34.    For instance, the webpage describing the Commercial X22i treadmill describes the live iFIT features as an integral part of the exercise equipment.



35.    It offers "Live and On-Demand World-wide workouts" and the live feature of "Auto Adjusting Speed & Incline."

36.     The web page describing the X22i also emphasizes "LIVE WORKOUTS" when describing the equipment's touchscreen monitor:



37.     The page features the treadmill's ability to allow sellers to "Tune in, Tone up, Live!" and reiterates the live features of iFIT:



38.     In sum, NordicTrack exercise bikes and treadmills are designed for using iFIT, and Defendants describe iFIT's live classes as a key function of the equipment.

**C.     NordicTrack Announces the Cancellation of Live Studio Classes**

39.     In early May 2022, NordicTrack announced that "After May 27, Live Studio Classes will be discontinued," and sent subscribers this message:



40.     Despite removing a key feature of its exercise equipment and software, NordicTrack did not offer discounts, incentives, or anything else to its customers.[2]

41.     NordicTrack continues to charge the same prices for the iFIT membership, notwithstanding the lack of live studio classes and live features that Defendants warranted the exercise equipment offered.

**D.     NordicTrack Breaches its Warranty Obligations to Plaintiff**

42.     Plaintiff purchased his S22i exercise bike and accompanying iFIT subscription from Defendants on July 21, 2019.

43.     Plaintiff purchased the S22i bike because it offered live studio classes and was less expensive than a similar product from Peloton.

44.     About three times a week, Plaintiff would take a live iFIT class using his bike.

45.     After Plaintiff received notice that live classes would be discontinued, he emailed Defendants on June 4, 2022, writing:

> My question is simple:
>
> What is your plan to remediate this abrupt cancellation to thousands of your clients who primarily purchased your equipment/technology for ***daily, live*** classes?
>
> Beyond that, why would any member pay full membership prices for services that are now diminished?

---

[2] On May 16, 2022, Peloton and iFIT announced that, as part of a global settlement of litigation between each other, "iFIT has agreed to remove certain on-demand leaderboard technology from its products." The announcement did not state whether iFIT was required to also cease offering live classes, *See* https://investor.onepeloton.com/news-releases/news-release-details/peloton-and-ifit-announce-settlement-all-pending-litigation

(emphasis in original).

46.     Defendants did not respond.

47.     Then on June 21, 2022, Plaintiff sent Defendants another letter:

> Please see the attached letter I emailed/mailed to your
> customer service team about 3 weeks ago.  To this date, I
> have not had the courtesy of a reply.
>
> So, I've taken the opportunity to contact you directly about
> this very salient and slightly troubling issue of abruptly
> canceling live classes without any advance notification to
> your global customer base and subscribers.
>
> As a small-business owner of a company that serves
> consumers directly, and a long-time user of NordicTrack
> equipment (and recently the S22i studio bike), I would
> imagine you and your team have some sort of remediation
> soon in place for folks that purchased your equipment for
> the primary purpose of sustained, live studio classes.

48.     Defendants have still not responded to Plaintiff. Nor have they offered

any form of compensation to Plaintiff or to any other class member.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself and on behalf of the

following proposed Nationwide Class, initially defined as follows:

> All persons in the United States who purchased a
> NordicTrack bike or treadmill on or before May 27, 2022,
> for personal, family, or household purposes, and not for
> resale.

50.     Plaintiff also brings this action on behalf of himself and on behalf of the

following proposed New Jersey Subclass, initially defined as follows:

> All persons in New Jersey who purchased a NordicTrack
> bike or treadmill on or before May 27, 2022, for personal,
> family, or household purposes, and not for resale.

51.     Excluded from the proposed Classes are Defendants, their parents, subsidiaries, affiliates, officers, and directors, any entity in which each Defendant has a controlling interest.

52.     Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

53.     The claims of all class members derive directly from a single course of conduct by Defendants. Defendants have engaged and continue to engage in uniform and standardized conduct toward the class members. Defendants do not differentiate, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual class members.

54.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

55.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

56.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

57.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiff at this time, but can be ascertained from Defendants' records.

58.     **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within their control or Plaintiff and the Classes themselves. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

59.     **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) whether Defendants breached their written warranties to Plaintiff and the classes;

(b) whether Defendants breached their implied warranties to Plaintiff and the classes;

(c) whether Defendants ceased providing iFIT live classes to the class members; and

(d) whether Defendants refused to offer any compensation or credits to the class members after it cancelled the live classes.

60.      **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)).   The claims of the Plaintiff and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendants, resulting in the same injury to the Plaintiff and the respective Classes. Plaintiff and all class members are similarly affected by Defendants' wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint. Plaintiff and the class members would not have purchased, or would have been willing to purchase only at a lower price, NordicTrack exercise bikes or treadmills, had they known that iFIT live classes would not be offered.

61.      **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Classes because its interests do not conflict with the interests of the class members, and it has retained counsel competent and experienced in complex class action, business competition, and consumer litigation. Plaintiff and its counsel will fairly and adequately protect the interest of the class members.

62.      **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by

individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)  the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants; or

(b)  the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which

would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

> (c)      Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION

**Breach of Written and Implied Warranties under the Magnuson-Moss
Warranty Act, 15 U.S.C. § 2301, *et seq.*
(On Behalf of Plaintiff and the Classes)**

64.      Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

65.      NordicTrack bikes and treadmills are consumer products as defined by 15 U.S.C. § 2301(1).

66.      Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

67.      Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

68.      15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

69.      15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with written and implied warranties.

70.    Defendants provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6), including that the bikes and treadmills offered an "iFIT experience" of live classes and other live features, including, among others:

- "LIVE and On-Demand Worldwide Workouts"

- "LIVE iFIT workouts can be streamed with even more consistent quality on the upgraded Rotating HD Smart Touchscreen"

- "Tune in, Tone Up, LIVE"

- "LIVE WORKOUTS"

- "Join trainers in their homes, on the local trails, or across the globe LIVE."

- "LIVE WORKOUT LEADERBOARD"

- "Text your trainers in real-time."

- "20% LIVE INCLINE CONTROL"

- "10% LIVE DECLINE CONTROL"

- "Our trainers LIVE control your incline, decline, and resistance quieter and more accurately so you can enjoy an even better workout"

- "Stream Unlimited Trainer-Led Workouts"

- "Discover your next favorite workout with our elite iFIT trainers. From live studio sessions to on-demand workouts that span the globe."

- "LIVE Interactions"

- "Join trainer-led classes where the instructor digitally adjusts your LIVE incline and resistance, keeping you focused on your high-energy workout."

- "Stream high-energy studio sessions with world-class trainers who LIVE control your machine's decline, incline, and resistance in real-time."

- "LIVE INTERACTIVE TRAINING"

- "Our on-demand, streaming workouts feature LIVE Interactions where our world-class trainers digitally adjust your incline, decline, and resistance for a great workout."

71. Defendants also impliedly warranted to Plaintiff and the class members that the bikes and treadmills were free from defects, of merchantable quality, and fit for the ordinary purposes for which this equipment is intended to be used, including live classes via iFIT.

72. Despite repeated demands, Defendants have failed to remedy the bikes' and treadmills' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties.

73. As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy them within a reasonable time, Plaintiff and the class members have suffered damages.

74. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and other Class members in connection with the commencement and prosecutions of this action.

75. Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendants' violation of their warranties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the proposed Classes, prays for relief and judgment against Defendants as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes, and designating Plaintiff's counsel as Class Counsel;

B.    awarding Plaintiff and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    granting declaratory and equitable relief;

D.    awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

E.    awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

F.    awarding pre-judgment and post-judgment interest; and

G.    granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 8, 2022

By: /s/ *Adam Pollock*
Adam Pollock
Raphael Janove (*pro hac vice* forthcoming)
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Adam@PollockCohen.com
Rafi@PollockCohen.com

*Attorneys for Plaintiff and the Proposed Classes*