UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT LARSEN, on behalf of himself and all others similarly situated, | Civ. No. 2:22-cv-04492-BRM-CLW |
| Plaintiff, | Hon. Brian R. Martinotti, U.S.D.J. |
| | Hon. Cathy L. Waldor, U.S.M.J. |
| v. | Oral Argument Requested |
| NORDICTRACK, INC., iFIT Inc., and iFIT HEALTH & FITNESS, INC., | Return Date:  November 21, 2022 |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TRANSFER VENUE OR DISMISS THE CLASS CLAIMS

Bennet Susser
**JARDIM, MEISNER & SUSSER P.C.**
30B Vreeland Road, Suite 100
Florham Park, New Jersey 07932
Telephone:  (973) 845-7640
bennet@jmslawyers.com

*Attorneys for Defendants*

Terry E. Welch (*pro hac vice*)
Robert S. Clark (*pro hac vice*)
Bryan S. Johansen (*pro hac vice*)
**PARR BROWN GEE & LOVELESS LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
rclark@ parrbrown.com
bjohansen@parrbrown.com

1

## Table of Contents

Preamble. ..................................................................................................6

I.      Introduction...................................................................................6

II.     Statement of Relevant Facts ...........................................................7

        A.      The nature of Defendants' business .......................................7

        B.      The Terms of Use .................................................................8

        C.      Plaintiff's Allegations and Agreement to Terms of Use.....................10

        D.      Plaintiff's Claim ................................................................12

III.    Argument .......................................................................................14

        A.      The Court Should Dismiss or Stay this Case and Compel the Parties to Arbitrate...................................................................14

        1.      A Valid Agreement to Arbitrate Exists. ..........................................15

        2.      This Court Must Compel Individual Arbitration as the Parties Agreed that the Arbitrator would Determine the Scope of any Arbitration Agreement. ..................................................................20

        3.      The Arbitration Agreement Covers this Dispute. ................................24

        B.      Alternatively, this Court Should Transfer the Case to the Agreed Upon Forum. .....................................................................26

        C.      Alternatively, this Court Should Dismiss the Class Claims. .............28

IV.     Conclusion ....................................................................................30

## Table of Authorities

Cases

*ADP, LLC v. Lynch*,
  2016 WL 3574328 (D.N.J. June 30, 2016) ........................................................17
*Adtile Techs. Inc. v. Perion Network Ltd.*,
  192 F. Supp. 3d 515 (D. Del. 2016) ...................................................................22
*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ...........................................................................................29
*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .....................................................................................14, 29
*AT&T Techs., Inc. v. Comm'n Workers of Am.*,
  475 U.S. 643 (1986) ...........................................................................................24
*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) .......................................................................................26, 27
*Battaglia v. McKendry*,
  233 F.3d 720 (3d Cir. 2000) ..............................................................................25
*Belnap v. Iasis Healthcare*
  844 F.3d 1272 (10th Cir. 2017) .........................................................................22
*Beture v. Samsung Elecs. Am., Inc.*,
  2018 WL 4621586 (D.N.J. July 18, 2018) .........................................................20
*Camilo v. Uber Techs., Inc.*,
  2018 WL 2464507 (S.D.N.Y. May 31, 2018) .....................................................30
*Cavallo v. Uber Techs., Inc.*,
  2017 WL 2362851 (D.N.J. May 31, 2017) .........................................................24
*Chassen v. Fid. Nat'l Fin., Inc.*,
  836 F.3d 291 (3d Cir. 2016) ..............................................................................21
*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
  809 F.3d 746 (3d Cir. 2016) ..............................................................................22
*Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*,
  974 F.3d 386 (3d Cir. 2020) ..............................................................................19
*Davis v. Dell*,
  2007 WL 4623030 (D.N.J. Dec. 28, 2007) ........................................................17
*Davis v. USA Nutra Labs*,
  303 F. Supp. 3d 1183 (D.N.M. 2018) ................................................................19
*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ...........................................................................................23

*Elsken v. Network Multi-Family Sec. Corp.*,
  49 F.3d 1470 (10th Cir. 1995)..................................................................19

*Falk v. v. Aetna Life Ins. Co.*,
  2019 WL 4143882 (D.N.J. Aug. 31, 2019) ....................................17, 23

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..................................................................................15

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................................................19

*Hancock v. AT&T Co.*,
  701 F.3d 1248 (10th Cir. 2012)................................................................18

*High v. Balun*,
  943 F.2d 323 (3d Cir. 1991)......................................................................15

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ....................................................................................20

*Hugger-Mugger, L.L.C. v. Netsuite, Inc.*,
  2005 WL 2206128 (D. Utah Sept. 12, 2005).........................................18

*In re: Howmedica Osteonics Corp*,
  867 F.3d 390 (3d Cir. 2017)......................................................................27

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)........................................................................27

*KDDI Glob. LLC v. Fisk Telecom LLC*,
  2017 WL 5479512 (D.N.J. Nov. 15, 2017) ............................................21

*Lawrence v. Xerox Corp.*,
  56 F. Supp. 2d 442 (D.N.J. 1999) ...........................................................27

*Lloyd v. HOVENSA, LLC.*,
  369 F.3d 263 (3d Cir. 2004)......................................................................24

*Manopla v. Raymours Furniture Co.*,
  2018 WL 3201800 (D.N.J. June 29, 2018) .............................................17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*,
  822 F. Supp. 125 (S.D.N.Y. 1993)..........................................................25

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................23

*Nazaruk v. eBay, Inc.*,
  2006 WL 2666429 (D. Utah Sept. 14, 2006) ..........................................18

*Neal v. Asta Funding, Inc.*,
  2016 WL 3566960 (D.N.J. June 30, 2016) .............................................21

*New Gold Equities Corp. v. Jaffe Spindler Co.*,
  453 N.J. Super. 358, 181 A.3d 1050 (N.J. Super. Ct. 2018).................19

*Raynor v. Verizon Wireless (VAW), LLC*,
  2016 WL 1626020 (D.N.J. Apr. 25, 2016) ..........................................................25

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..........................................................................................20

*Semenko v. Wendy's Int'l, Inc.*,
  2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)....................................................29

*Semenov v. Hill*,
  982 P.2d 578 (Utah App. 1999) ........................................................................19

*Singh v. Uber Techs. Inc.*,
  235 F. Supp. 3d 656 (D.N.J. 2017) ............................................................17, 18

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005)..............................................................................20

**Statutes**

9 U.S.C. § 2 ................................................................................................14
9 U.S.C. § 4 ................................................................................................15
15 U.S.C. 2301 ............................................................................................13
15 U.S.C. 2301(6) ........................................................................................13
15 U.S.C. 2310(d) ........................................................................................13
28 U.S.C. § 1404(a) ..............................................................................7, 26, 27

**Rules**

Fed. R. Civ. P. 12(f) ......................................................................................29
Federal Rule of Civil Procedure 23(d)(1)(D) ....................................................29
Rules 7(b) and 12(b) of the Federal Rules of Civil Procedure .................................6

Under Rules 7(b) and 12(b) of the Federal Rules of Civil Procedure, defendants NordicTrack, Inc., iFIT Inc., and iFIT Health & Fitness Inc.[1] (collectively "Defendants") hereby move this Court to dismiss or stay this case and compel arbitration or, in the alternative, to transfer this case to the Federal District Court for the District of Utah, Northern Division based upon the written consent of the parties or, lastly, to dismiss the class-related aspects of the Complaint filed by plaintiff/putative class representative Kurt Larson ("Plaintiff").

## I.    INTRODUCTION

Plaintiff Kurt Larsen seeks to litigate in this Court a claim relating to the iFIT live classes—a claim that he agreed to resolve exclusively by individual arbitration, not in court and not in a class action. The agreed-upon Terms of Use for using iFIT devices and services unequivocally state that disputes must be resolved through arbitration at the election of Defendants:

> You acknowledge and agree that ICON may, at its sole discretion, require you to submit any disputes arising from the use of these Terms of Use or the ICON Sites, including disputes arising from or concerning their interpretation, violation, invalidity, non-performance, or

---

[1] On August 9, 2021, a Certificate of Amendment of Certificate of Incorporation of ICON Health & Fitness, Inc. was filed with the Secretary of State of the State of Delaware changing the name of ICON Health & Fitness, Inc. to iFIT Inc.

termination, to final and binding arbitration under the Rules of Arbitration of the American Arbitration Association applying Utah law.

Under well-settled law in this Circuit, Plaintiff's consent to the Terms of Use for using iFIT devices and services requires the Court to stay or dismiss this lawsuit and refer this dispute to mandatory, individual arbitration.

In the alternative, if the Court does not compel arbitration, the Court should transfer this lawsuit to the United States District Court for the District of Utah, Northern Division, based upon the agreement of the parties and 28 U.S.C. § 1404(a).

Last, if the Court does not compel arbitration or transfer the case to the agreed upon forum, the Court should strike the class allegations of the Complaint as Plaintiff expressly waived his right to assert claims on behalf of a class.

## II.    STATEMENT OF RELEVANT FACTS

### A.    The nature of Defendants' business

Defendants iFIT Inc. and iFIT Health & Fitness, Inc. (collectively, "iFIT") are leading providers of at-home and commercial workout information, materials, programming, and training-support technology. Defendant NordicTrack, Inc. is an inactive shell company. NordicTrack is a brand under which iFIT markets and sells exercise equipment such as stationary bicycles and treadmills.

In addition to selling NordicTrack-branded stationary bicycles and treadmills, iFIT also operates and sells iFIT memberships. [*See* Declaration of Chase Watterson

("Watterson Decl.") ¶ 3, attached as Exhibit A.] iFIT connects individuals with fitness coaching, whether through smart-device applications, or touchscreens on workout equipment. [*Id.*] Many individuals who purchase NordicTrack equipment also register for iFIT memberships, so that they can access iFIT's training-support technology during their workouts. [*Id.* ¶ 4.] However, NordicTrack equipment will operate without an iFIT membership. [*Id.*]

**B.    The Terms of Use**

The opening paragraph of the iFIT Terms agreed to by Kurt Larson states as follows:

> These terms of use are entered into by and between You and ICON Health & Fitness, Inc., together with its affiliates, partners, licensors, subsidiaries, and/or related companies, "ICON,"…). The following terms and conditions… govern your access to and use of the ICON Health & Fitness websites…, along with any downloadable applications, services, Content (as hereinafter defined), or interface provided by us, including iFIT Services and ICON-controlled social media pages….
>
> BY USING AN ICON SITE OR ICON SERVICES, YOU AGREE TO BE BOUND BY THESE TERMS OF USE, THE PRIVACY POLICY, AND/OR ANY OTHER POLICY REFERENCED HEREIN. IF YOU DO NOT WISH TO BE BOUND BY THESE TERMS OF USE, YOU MUST DISCONTINUE YOUR USE OF THE ICON SITES AND/OR ICON SERVICES. THESE TERMS OF USE BECOME EFFECTIVE IMMEDIATELY UPON COMMENCEMENT OF YOUR USE OF AN ICON SITE.

[*See* Watterson Decl., Exhibit 1 ("January 2019 iFIT Terms") at 1 and Exhibit 2

("September 2019 iFIT Terms" and with the January 2019 iFIT Terms, the "iFIT

Terms") at 1.]

Since the Fall of 2018—before Plaintiff purchased his treadmill and signed up

for iFIT—the Terms of Use that govern access to iFit.com have included the

following arbitration agreement:

> You acknowledge and agree that ICON may, at its sole discretion,
> require you to submit any disputes arising from the use of these Terms
> of Use or the ICON Sites, including disputes arising from or concerning
> their interpretation, violation, invalidity, non-performance, or
> termination, to final and binding arbitration under the Rules of
> Arbitration of the American Arbitration Association applying Utah law.

[*See* Watterson Decl., January 2019 iFIT Terms at 9–10 and September 2019 iFIT

Terms at 11.]

The iFIT Terms state that "any disputes or claims not subject to arbitration

[at the election of iFIT] (as set forth below), you agree to commence or prosecute

any action in connection therewith in the State of Utah, Cache County." [January

2019 iFIT Terms at 9; September 2019 iFIT Terms at 11.]

The iFIT Terms also provide that subscribers "acknowledge and agree that

you may only resolve disputes with us on an individual basis"—not "as a plaintiff

or a class member in a class, consolidated, or representative action." [January 2019

iFIT Terms at 9 and September 2019 iFIT Terms at 10–11.] The class-action waiver

9

specifies that "[c]lass arbitrations ... are not allowed." [January 2019 iFIT Terms at 9 and September 2019 iFIT Term at 10–11.]

Individuals who sign up for iFIT memberships must agree to iFIT's Terms of Use ("iFIT Terms"). [*See* Watterson Decl. ¶ 5.] The iFIT Terms are readily available, and frequently presented to, users online. [*See id.* ¶¶ 6, 10, 16.]

### C.   Plaintiff's Allegations and Agreement to Terms of Use

On July 21, 2019, Plaintiff allegedly purchased an S22i studio cycle bike and iFIT membership. [Complaint ¶ 7; *see* Watterson Decl. ¶ 12 (stating that iFIT records reflect that the iFIT membership was purchased July 17, 2019).] Plaintiff allegedly purchased the exercise bike "because it offered live studio classes and was less expensive than a similar product from Peloton." [Complaint ¶ 43.] Plaintiff's exercise bike included a one-year iFIT membership. [*See* Watterson Decl. ¶ 12.]

On or around July 17, 2019, Plaintiff activated that membership and became an iFIT member through iFit.com. [*See* Watterson Decl. ¶ 13.] As of July 17, 2019, when Kurt Larson signed-up for an iFIT membership on iFit.com, users were required to click a box that said "Purchase for $X," with X representing the purchase price (For users with an "activation code," the purchase price was zero). [*See id.* ¶ 11.] Below that box was a statement that read "By clicking submit, you agree to the **Terms of Service.**" [*Id.*] Terms of Service appeared in bold, blue font, and hyperlinked directly to the iFIT terms available on iFit.com. [*Id.*]

iFIT's records show that Plaintiff clicked the box agreeing to the Terms of Service on the iFIT membership registration page. [*Id.* ¶ 14.] Before clicking the box, Plaintiff could have taken as long as he wished to review the iFIT Terms. [*Id.*] If Plaintiff opted to click the Terms of Use hyperlink on the registration page, it would have directed him to the January 2019 iFIT Terms. [*Id.* ¶ 13.]

From the time he activated his iFIT membership until their cancellation, Plaintiff allegedly took live iFIT classes using his bike about three times a week using Defendants' streaming platform. [Complaint ¶ 44.]

Plaintiff manually renewed his iFIT membership on July 23, 2020, and May 31, 2021 during which times he reaffirmed his agreement to the iFIT terms. [*See* Watterson Decl. ¶ 19.] Specifically, all manual iFIT membership renewals are processed through each member's user portal on iFit.com. [*Id.* ¶ 15.] In the member portal, after selecting the type of membership renewal desired, the member must enter a payment method. [*Id.* ¶ 16.] After entering an approved payment method, the "PLACE ORDER" button activates. [*Id.*] Below the "PLACE ORDER" button, it states "By clicking 'PLACE ORDER,' you agree to the Terms of Use and Privacy Policy." [*Id.*] The phrase "Terms of Use" appears in a different color font and hyperlinks directly to the iFIT Terms. [*Id.*] If a member clicks on the "Terms of Use" hyperlink on the membership renewal page, the member could take as long as the

member desires to review the iFIT Terms before agreeing to place the order for the membership renewal. [*Id.* ¶ 18.]

If Plaintiff clicked on the Terms of Use hyperlink when he manually renewed his membership on July 23, 2020 or May 31, 2021, he would have been directed to the September 2019 iFIT Terms. [*Id.* ¶¶ 20–21.]

After May 27, 2022, Defendants discontinued all live classes. [Complaint ¶ 39.] After receiving notice that all live classes were being discontinued, Plaintiff allegedly reached out to Defendants multiple times in June asking whether Defendants were taking any remediation efforts for "folks that purchased [NordicTrack] equipment for the primary purpose of sustained, live studio classes." [*Id.* ¶ 47.] Plaintiff alleges that Defendants never responded to his queries. [*Id.*]

Notably, Kurt Larson continues to be an iFIT subscriber and continues to have access to extensive library of on demand classes and workouts through his iFIT subscription. [*See*, *e.g.*, Complaint ¶¶ 21, 39; Watterson Decl. ¶ 10 (authenticating the Order history of Kurt Larson, which reflects renewal of his iFIT membership on July 31, 2022).]

### D.    Plaintiff's Claim

On July 8, 2022, Plaintiff filed his Complaint, on his own behalf and purportedly on behalf of a nationwide class, defined as "[a]ll persons in the United States who purchased a NordicTrack bike or treadmill on or before May 27, 2022,

for personal, family, or household purposes, and not for resale," and purportedly on behalf of a New Jersey subclass, defined as "[a]ll persons in New Jersey who purchased a NordicTrack bike or treadmill on or before May 27, 2022, for personal, family, or household purposes, and not for resale." [*Id.* ¶¶ 49–50.]

Plaintiff brings one cause of action for breach of written and implied warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* Specifically, Plaintiff alleges that Defendants provided "Plaintiff and Class members 'written warranties' within the meaning of 15 U.S.C. § 2301(6), including that the bikes and treadmills offered an 'iFIT experience' of live classes and other live features." [*Id.* ¶ 70.] And Plaintiff alleges that Defendants "impliedly warranted to Plaintiff and the class members that the bikes and treadmills were free from defects, of merchantable quality, and fit for the ordinary purposes for which the equipment is intended to be used, including live classes via iFIT." [*Id.* ¶ 71.]

As a result of breaching those purported warranties, Plaintiff alleges that he and the putative class members "are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been incurred by Plaintiff and other Class members" and "equitable relief under 15 U.S.C. § 2310(d)." [*Id.* ¶¶ 74–75.]

13

## III.   ARGUMENT

This Court should compel Plaintiff to abide the iFIT Terms, which he affirmatively accepted at least three times, and compel arbitration. The iFIT Terms are clear: Disputes regarding the use of the iFIT site and streaming services, including iFIT live studio classes, must be resolved through binding arbitration.

If, however, the Court determines that Plaintiff need not arbitrate this dispute, then the Court should transfer the dispute to Utah, the forum Plaintiff agreed to on multiple occasions.

And finally, if the Court does not compel arbitration or transfer the dispute to Utah, the Court should strike all class claims as Plaintiff has explicitly waived such claims.

### A.   The Court Should Dismiss or Stay this Case and Compel the Parties to Arbitrate

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration," and courts must "enforce [arbitration agreements] according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted).

Likewise, under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Here, the parties entered into a valid agreement that provides the parties shall arbitrate their disputes, individually, upon the election of Defendant.  Plaintiff has refused to consent to arbitrate this dispute thus requiring this motion.  Likewise, the parties expressly agreed that the scope of the agreement to arbitrate will be determined by the arbitrator.  As a result, this Court should dismiss or stay this case and compel the parties to arbitrate their dispute individually as agreed.

### 1.  A Valid Agreement to Arbitrate Exists.

The question of whether Plaintiffs agreed to arbitrate by accepting the iFIT Terms is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, a conflict-of-law analysis might consider the laws of two states: New Jersey or Utah.

However, a choice-of-law analysis is unnecessary because, as shown below, there is no conflict among the applicable states' laws strongly favoring enforcement of "clickwrap" agreements like the one at issue here. *See, e.g.*, *High v. Balun*, 943

F.2d 323, 325 (3d Cir. 1991) ("Where the application of either state's law would yield the same result, no conflict exists to be resolved." (citation omitted)).

Under "ordinary state-law principles that govern the formation of contracts," *First Options*, 514 U.S. at 944, Plaintiff affirmatively agreed to the Arbitration Agreement.

On multiple occasions, Plaintiff affirmatively accepted the iFIT terms, including the agreement to arbitrate. On or around July 17, 2019, Plaintiff activated his iFIT membership and became an iFIT member through iFit.com. [*See* Watterson Decl. ¶ 13.] As of July 17, 2019, when Kurt Larson signed-up for an iFIT membership on iFit.com, users were required to click a box that said "Purchase for $X," with X representing the purchase price (For users with an "activation code," the purchase price was zero). [*See id.* ¶ 11.] Below that box was a statement that read "By clicking submit, you agree to the **Terms of Service.**" [*Id.*] Terms of Service appeared in bold, blue font, and hyperlinked directly to the iFIT terms available on iFit.com. [*Id.*]

Furthermore, when Plaintiff manually renewed his iFIT membership on July 23, 2020 and May 31, 2021, Plaintiff clicked the "PLACE ORDER" button, which expressly indicated that by so clicking, Plaintiff "agree[ed] to the Terms of Use," which included the agreement to arbitrate. [*See id.* ¶¶ 16–18.]

Thus, the iFIT Terms are a classic example of an enforceable "clickwrap" agreement, which "requires a [] user to affirmatively manifest their asset to the terms of the contract," usually by clicking a box or toggling a button. *Manopla v. Raymours Furniture Co.*, No. 17-cv-7649, 2018 WL 3201800, at *4 (D.N.J. June 29, 2018).[2] "Numerous courts, including courts in the Third Circuit, have enforced clickwrap agreements." *ADP, LLC v. Lynch*, No. 16-cv-01053, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016).[3]

For example, courts have recognized for more than a decade that "[u]nder [] New Jersey . . . law, when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement." *Davis v. Dell*, No. 07-cv-630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007).[4] *See also, e.g.*, *Falk v. Aetna Life Ins. Co.*, No. 19-cv-00434, 2019 WL 4143882, at *4 (D.N.J. Aug. 31, 2019)[5] (enforcing clickwrap arbitration agreement under New Jersey law); *Singh v. Uber*

---

[2] A copy of this decision is attached to the Declaration of Bennet Susser, dated October 24, 2022 ("Susser Decl.") as Exhibit A.

[3] Susser Decl., Exhibit B.

[4] Susser Decl., Exhibit C.

[5] Susser Decl., Exhibit D.

*Techs. Inc.*, 235 F. Supp. 3d 656, 666 (D.N.J. 2017) (same), *vacated on other grounds*, 939 F.3d 210 (3d Cir. 2019).

While Utah state courts have not yet directly addressed this issue, the Utah federal district court and other courts within the Tenth Circuit recognize and enforce clickwrap agreements. *See, e.g.*, *Hancock v. AT&T Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (declaring that "courts generally uphold clickwrap agreements"); *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, No. 2:04-cv-592, 2005 WL 2206128, at *6 (D. Utah Sept. 12, 2005)[6] (finding clickwrap agreement enforceable under California law); *Nazaruk v. eBay, Inc.*, No. 2:06CV242, 2006 WL 2666429, at *3 (D. Utah Sept. 14, 2006)[7] (enforcing forum selection clause in clickwrap agreement). "Courts evaluate whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to read the agreement, and the consumer manifested an unambiguous acceptance of the terms." *Hancock*, 701 F.3d at 1256.

Moreover, the terms and conditions of such agreements may be incorporated through a hyperlink. *See, e.g.*, *Singh*, 235 F. Supp. 3d at 665 (applying New Jersey law) ("In the internet era, when agreements are often maintained, delivered and signed in electronic form, a separate document may be incorporated through a

---

[6] Susser Decl., Exhibit E.

[7] Susser Decl., Exhibit F.

18

hyperlink[.]" (internal quotations and citation omitted)); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190–91 (D.N.M. 2018) ("Notably, federal courts have consistently enforced clauses contained in clickwrap agreements ..., where the agreement is presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.") (internal quotation marks and alterations omitted). Where a user accepts the terms and conditions with an opportunity to review them, whether the user actually read the terms and conditions is immaterial. "Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (citation and internal quotation marks omitted); *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 404 (3d Cir. 2020) ("In short, '[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.'" (citing *New Gold Equities Corp. v. Jaffe Spindler Co.*, 453 N.J. Super. 358, 382, 181 A.3d 1050, 1064 (N.J. Super. Ct. 2018) (citation omitted)); *see also Semenov v. Hill*, 982 P.2d 578, 581 (Utah App. 1999)) ("where a person signs a document . . . he will be bound by all of its provisions"); *Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1474 (10th Cir. 1995) (interpreting the same standard applied by Utah to reach the conclusion that "a party who signs a contract without reading it cannot avoid its legal

effect that it did not read the contract or that the contents of the contract were not known to the party").

Accordingly, the agreement to arbitrate in the iFIT Terms is valid and enforceable.

>   **2.  This Court Must Compel Individual Arbitration as the Parties Agreed that the Arbitrator would Determine the Scope of any Arbitration Agreement.**

The Supreme Court has held "that a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability,'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). In general, the question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, a question of arbitrability, is decided by a court. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (To compel arbitration, the Court must determine that (1) "a valid agreement to arbitrate exists," and (2) "the particular dispute falls within the scope of that agreement.").

Nonetheless, arbitrability questions are properly decided by an arbitrator when there is "clear and unmistakable evidence" that the parties intended to submit issues of arbitrability to the arbitrator. *Howsam*, 537 U.S. at 83; *see generally Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010); *Beture v. Samsung Elecs. Am.,*

*Inc.*, No. 17-cv-5757, 2018 WL 4621586, at *3 (D.N.J. July 18, 2018)[8] ("If the parties have contractually agreed to submit to the arbitrator the issue of whether a dispute falls within the scope of the Agreement," then the Court should stop at the first step and compel arbitration in order for the arbitrator to determine the scope of the arbitration agreement.); *see also Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 304 n.17 (3d Cir. 2016) ("The scope of an arbitration clause is decided by the court absent clear and unmistakable evidence that the parties agreed to submit this issue to the arbitrator.").

Courts have found that by incorporating specific arbitration rules that indicate that the question of arbitrability should be decided by the arbitrator, then such incorporation shows that the parties "clearly and unmistakably" agreed to have the arbitrator determine arbitrability. *See Neal v. Asta Funding, Inc.*, Civ. No. 13-6981, 2016 WL 3566960, at *14 (D.N.J. June 30, 2016)[9] ("by agreeing to arbitrate in accordance with AAA rules, the parties to [an arbitration agreement] clearly and unmistakably agreed to arbitrate the issue of arbitrability"; *see also KDDI Glob. LLC v. Fisk Telecom LLC*, Civ. No. 17-5445, 2017 WL 5479512, at *7 (D.N.J. Nov. 15, 2017)[10] (ruling that an arbitration agreement's incorporation of the AAA

---

[8] Susser Decl., Exhibit G.

[9] Susser Decl., Exhibit H.

[10] Susser Decl., Exhibit I.

21

Commercial Arbitration Rules "explicitly and unequivocally requires an Arbitrator to decide the issue of arbitrability"); *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 526 (D. Del. 2016) (holding that, because the arbitration agreement incorporated the JAMS Comprehensive Arbitration Rules, the arbitrator would determine the arbitrability of disputed claims, including misappropriation of trade secrets, unfair competition, and common law unfair competition).  The Third Circuit itself has observed, though not held, that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (internal citations omitted).

The Tenth Circuit is also in accord.  In *Belnap v. Iasis Healthcare*, it held that incorporation of the JAMS Rules—which it noted were "substantively identical" to the AAA rules incorporated into the JV Agreement—constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability. 844 F.3d 1272, 1283-84 (10th Cir. 2017).

Here, the arbitration agreement in the iFIT Terms provides for arbitration "under the Rules of Arbitration of the American Arbitration Association applying Utah law." [iFIT Terms.] The Rules of Arbitration of the American Arbitration Association ("AAA") state that "[t]he arbitrator shall have the power to rule on his

or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule R-7(a) (2013).

By incorporating the AAA rules, the iFIT Terms clearly and unmistakably delegated the question of arbitrability to the arbitrator. This Court need not determine, therefore, whether Plaintiff's precise claims are subject to the arbitration agreement; Plaintiff agreed that the arbitrator would make that determination. This Court need only compel arbitration in accordance with the arbitration agreement.

Accordingly, when the two fundamental questions are decided in favor of arbitration (*i.e.*, that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement), as they are here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985).

Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see Falk v. Aetna Life Ins. Co.*, No. 19-cv-00434, 2019 WL

4143882, at *2 (D.N.J. Aug. 31, 2019)[11] (recognizing the "emphatic federal policy in favor of arbitral dispute resolution" and compelling arbitration based on electronic agreement). Once the Court directs the parties to proceed to arbitration, it must either dismiss the action or grant a stay pending arbitration. *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004); *Cavallo v. Uber Techs., Inc.*, No. 16-cv-4264, 2017 WL 2362851, at *10 (D.N.J. May 31, 2017).[12]

### 3. The Arbitration Agreement Covers this Dispute.

Although the Court need not and should not reach issues of scope, this dispute falls squarely within the arbitration agreement, which applies to "any disputes arising from the use of these Terms of Use or the ICON Sites." The term "ICON Sites" is defined to include any of the ICON Health & Fitness websites, including iFit.com, through which Plaintiff accessed the live, studio classes. [January 2019 iFIT Terms at 1; September 2019 iFIT Terms at 1.]

In assessing the scope of an agreement to arbitrate, courts apply a "presumption of arbitrability," meaning the court must order arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475

---

[11] Susser Decl., Exhibit D.

[12] Susser Decl., Exhibit J.

U.S. 643, 650 (1986) (internal quotation marks omitted); *see, e.g.*, *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) (applying the presumption of arbitrability and adopting "broad construction" of arbitration provision). Only "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 US. at 650 (internal quotation marks omitted). Here, Plaintiff's claim that Defendants breached written and implied warranties by failing to provide live classes through the ICON Sites, *see* Complaint ¶¶ 64–75, plainly "aris[es] from the use of . . . the ICON Sites." The case, therefore, falls directly within the scope of the arbitration agreement. *See, e.g.*, *Raynor v. Verizon Wireless (VAW), LLC*, No. 15-cv-5914, 2016 WL 1626020, at *5 (D.N.J. Apr. 25, 2016)[13] ("[C]ourts have generally read the terms 'arising out of' or 'relating to' a contract … as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in *any* way to the contract.") (emphasis in original); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 132 (S.D.N.Y. 1993) ("[W]here the agreement contains a 'broad' arbitration clause, such as the one at issue here, purporting to submit to arbitration 'any controversy between us arising out of your business or this agreement,' the strong presumption in favor of arbitrability has been held to apply with even greater force.").

---

[13] Susser Decl., Exhibit K.

**B.  Alternatively, this Court Should Transfer the Case to the Agreed-Upon Forum.**

*Assuming arguendo* that the Court declines to submit this dispute to binding arbitration, then, under 28 U.S.C. § 1404(a) and the iFIT Terms, it should transfer the case to the United States District Court, District of Utah, Northern Division.

The Terms of Use includes the following forum-selection clause:

> With respect to any disputes or claims not subject to arbitration (as set forth below), you agree to commence or prosecute any action in connection therewith in the State of Utah, Cache County, and you hereby consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to, venue and jurisdiction.

[January 2019 iFIT Terms at 9; September 2019 iFIT Terms at 11.]

Section 1404(a) states that for "the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Supreme Court has held that forum-selection clauses such as the one in the iFIT Terms are enforceable and that courts should take them into consideration when addressing motions for transfer of forum under 28 U.S.C. § 1404(a): "Section 1404(a) provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district .... And ... a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist.*

26

*Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013) (internal quotation marks omitted).

Typically, when a party moves to transfer venue under Section 1404(a), the moving party has the burden to establish that "the proposed alternative forum is not only adequate, but also more convenient than the present forum." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). When a forum selection clause is at play, however, the burden shifts to the plaintiff to demonstrate "that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine Const. Co.*, 571 U.S. at 51. Furthermore, unlike typical transfer analysis, courts should "not consider the parties' private interests aside from those embodied in the forum-selection clause," thus leaving only public interest considerations. Public interests include "the enforceability of the judgment; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017). Public interests, however, "rarely defeat a transfer motion." *Atlantic Marine Const. Co.*, 571 U.S. at 51. Given those constraints, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Here, the forum selection clause is clear and unambiguous: This case should

be decided "in the State of Utah, Cache County," which is part of the Northern

Division of the United States District Court, District of Utah. It is therefore

Plaintiff's burden to show that this case should be the exception to the foregoing

rule.

Moreover, the majority of the public interest factors favor transferring the case

to Utah as any potential judgment would be executed in Utah, where Defendants are

headquartered and the District of Utah is less congested than the District of New

Jersey. *See* United States District Courts – National Judicial Caseload Profile,

https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf

(last visited October 13, 2022).  Further, given that the governing law is Utah law,

the District of Utah is uniquely familiar with interpreting and applying Utah law.

### C.    Alternatively, this Court Should Dismiss the Class Claims.

If the Court declines to compel arbitration or transfer this case to Utah, then

the Court should strike Plaintiff's class claims from the Complaint and dismiss them

with prejudice because Plaintiff explicitly waived his right to proceed on a class wide

basis in the iFIT Terms. Specifically, Plaintiff agreed that he would "only resolve

disputes with [Defendants] on an individual basis, and may not bring a claim as a

plaintiff or a class member in a class, consolidated, or representative action."

[January 2019 iFIT Terms at 9; September 2019 iFIT Terms at 10-11.] Quite simply,

28

Plaintiff agreed that "Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations are not allowed under" the iFIT Terms. *Id.*

It is well established that class action waivers are valid and should be enforced. *See Concepcion*, 563 U.S. at 352 (upholding class action waiver notwithstanding state law rule that such waivers are unconscionable); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 n.5 (2013) (FAA "favor[s] the absence of litigation when that is the consequence of a class-action waiver" (internal citations omitted)). Under Federal Rule of Civil Procedure 23(d)(1)(D), the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *See also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."). Given that Plaintiff expressly and repeatedly waived the right to prosecute his dispute on behalf of or a part of a class, the class action aspects of the Complaint should not be allowed to proceed.

Likewise, motions to strike under Rule 23(d)(1)(D) must be granted when "no amount of discovery will demonstrate that the class can be maintained." *Semenko v. Wendy's Int'l, Inc.*, No. 12-cv-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12,

2013).[14] That is the case here: No amount of additional discovery will alter the fact that Plaintiff agreed to waive any right to proceed as a class. *See Camilo v. Uber Techs., Inc.*, No. 17-cv-9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018)[15] (granting motion to strike class claims based on class action waiver).  As a result, if the Court neither compels arbitration nor transfers the action, it should strike the class-related portions of the Complaint.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court order Plaintiff to submit his claim to individual arbitration and dismiss this action. Alternatively, if the Court declines to compel arbitration, it is respectfully requested that the Court transfer this case to the United States District Court, District of Utah. And finally, if the Court declines to do either of those, it is respectfully requested that the Court strike the class claims from the Complaint.

Dated: October 24, 2022

By: /s/ *Terry E. Welch*
 Terry E. Welch (*pro hac vice*)
 Robert S. Clark (*pro hac vice*)
 Bryan S. Johansen (*pro hac vice*)
 **PARR BROWN GEE &
 LOVELESS LLP**

---

[14] Susser Decl., Exhibit L.

[15] Susser Decl., Exhibit M.

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
twelch@parrbrown.com
rclark@parrbrown.com
bjohansen@parrbrown.com

By: /s/ *Bennet Susser*
    Bennet Susser
    **JARDIM, MEISNER &**
    **SUSSER, P.C.**
    30B Vreeland Road, Suite 100
    Florham Park, NJ  07932
    bennet@jmslawyers.com